IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DAVID WALKER, et al., | ) |
| Plaintiffs, | ) |
| v. | ) NO. 3:22-cv-00417 |
| | ) JUDGE RICHARDSON |
| GEORGE NELSON MASSEY, et al., | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is "Defendant Bryant Crutchfield's Motion for Partial Dismissal for Failure to State a Claim Upon Which Relief Can be Granted" (Doc. No. 20, "Motion"), supported by an accompanying memorandum (Doc. No. 21). Plaintiffs[1] filed a response in opposition to the Motion (Doc. No. 28), and the movant (obviously Defendant Bryant Crutchfield, "Defendant") filed a reply (Doc. No. 31).

Via the Motion, Defendant seeks dismissal, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, of Plaintiffs' claims against Defendant for punitive damages and for negligence per se for alleged violations of the Federal Motor Carrier Safety Regulations ("FMCSR"). Defendant does not challenge Plaintiffs' claim against Defendant for negligence. According to Defendant, with respect to the punitive damages and negligence *per se* claims, Plaintiff's Complaint (Doc. No. 1, cited by Plaintiff as "ECF No. 1") fails to state a claim upon which relief can be granted.

---

[1] There are actually two Plaintiffs, each a passenger in the vehicle allegedly struck by Defendant, although for whatever reason, Plaintiff uses the term "Plaintiff," in the singular, several times in the Response.

The instant case is a personal-injury action, pending in this Court by virtue of diversity jurisdiction, arising out of a vehicular accident. Plaintiff provides the following summary of the factual allegations of the Complaint, and Defendant does not contest the accuracy of that summary. Accordingly, the Court accepts the summary as an accurate recounting of the alleged facts. The Court also accepts the truth of the alleged facts for purposes of the Motion (consistent with the legal standards for a 12(b)(6) motion discussed below), except insofar as they amount to legal conclusions (such as the statement that Defendant is culpable of negligence and that such negligence proximately caused Plaintiff's injuries):

> The collision at issue in this action occurred on June 18, 2021 in a Tennessee Department of Transportation ("TDOT") authorized and properly signed construction zone on Interstate 840 where construction vehicles and workers were present. ECF No. 1 at ¶¶ 29-30, 33, 50. The posted signage alerted and advised westbound motorists on Interstate 840 of the construction zone, the right travel lane closure, and the reduced speed limit of 60 mph. *Id.* at ¶¶ 30-32. Defendant Bryant K. Crutchfield ("Crutchfield"), operating a tractor-trailer that weighed in excess of 26,001 pounds, ignored the signage and maintained a speed of *at least* 70 mph as he entered the construction zone. *Id.* at ¶¶ 13, 34-35.
>
> According to an independent witness, "Defendant Crutchfield was driving erratically [as he entered the construction zone], 'whipping' in[to] the left lane at the last moment." *Id.* at ¶ 37. The witness described that Defendant Crutchfield was "flying," and estimated his speed was upwards of 75-80 mph in the reduced 60 mph construction zone. *Id.* at ¶ 38. Due to his erratic operation and grossly excessive speed, Defendant Crutchfield struck a concrete barrier before violently crashing into the rear of Plaintiffs who had slowed their vehicle due to slowing traffic in the single lane of travel. *Id.* at ¶¶ 39, 46-49. Defendant Crutchfield then jack-knifed and struck a parked construction vehicle. *Id.* at ¶ 50. Defendant Crutchfield was inexplicably not wearing shoes at the time of the collision. *Id.* at ¶ 40.
>
> Defendant Crutchfield failed to heed and comply with traffic control signals (i.e. construction signs), failed to slow his speed, failed to maintain a safe distance, failed to keep a proper lookout, failed to observe the slowing traffic, failed to maintain control of his tractor-trailer, failed to operate the tractor-trailer in a safe and prudent manner in view of the conditions that existed at the time, failed to give full attention to the roadway, failed to exercise due care, and operated the tractor-trailer in a negligent, careless, dangerous and reckless manner. *Id.* at ¶¶ 43- 45, 51- 53, 84, 88. His operation of the tractor-trailer violated duties that he owed to the public to give full attention to the traffic around him and operate the tractor-trailer

with the same care as other similarly situated tractor-trailer drivers would use to ensure the safety of the public. *Id.* at ¶¶ 23-24, 88(k-l).

Defendant's negligence was a direct and proximate cause of the collision, which resulted in a totaled vehicle and the Plaintiffs suffering serious injury. *Id.* at ¶¶ 64-66, 89-91. The Tennessee Highway Patrol ("THP") investigated the wreck and issued Defendant Crutchfield a summons for Failure to Exercise Due Care. *Id.* at ¶ 54. Defendant Crutchfield pled guilty to that offense on October 18, 2021. *Id.* at ¶ 55. As alleged in the Complaint, Defendant Crutchfield was an unsafe truck driver with "multiple [prior] speeding violations while [operating] a commercial motor vehicle," and at least one prior conviction for drug possession. *Id.* at ¶ 72.

Defendant Crutchfield's employer, Defendant George Nelson Massey, d/b/a Comet Express ("Comet Express"), was similarly an unsafe trucking operation. According to its Federal Motor Carrier Safety Administration ("FMCSA") Safety Measurement System profile, "the out of service rate for the tractor-trailers owned and operated by Comet Express was 55.6%, nearly three times the national average of 20.7%. *Id.* at ¶¶ 76-77 (emphasis added). An examination of Comet Express' Inspection History demonstrates that the tractor-trailer involved in this collision (Registration # PWP4267) was placed out-of-service merely two months earlier on April 5, 2021 for unsafe cargo and violations of the driver's record of duty status. *Id.* at ¶ 76. A reasonable inference is that Defendant Crutchfield was also driving the tractor-trailer on this prior occasion as it is not uncommon for drivers to be assigned the same tractor-trailer unit throughout the period of employment.

Defendants were at all times subject to and required to obey the Federal Motor Carrier Safety Regulations ("FMCSR"), which was enacted to prevent crashes involving members of the public, such as the Plaintiffs. *Id.* at ¶¶ 11, 69-70, 96. That notwithstanding, Defendants knowingly, intentionally, recklessly, and/or willfully disregarded the FMCSR. *Id.* at ¶ 107.

(Doc. No. 28 at 1-3).

## LEGAL STANDARDS

For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*.; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *cited in Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bold" allegations. *Id*. at 681. The question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter—plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Federal Rule of Civil Procedure 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id*. at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Rule 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to

the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.,* 219 F.Supp.3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

On a Rule 12(b)(6) motion to dismiss, "[t]he moving party has the burden of proving that no claim exists." *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross and Blue Shield,* 552 F.3d 430, 433 (6th Cir.2008). That is not to say that the movant has some *evidentiary* burden; as should be clear from the discussion above, evidence (as opposed to *allegations* as construed in light of any allowable matters outside the pleadings) is not involved on a Rule 12(b)(6) motion. The movant's burden, rather, is a burden of *explanation*; since the movant is the one seeking dismissal, it is the one that bears the burden of explaining—with whatever degree of thoroughness is required under the circumstances—why dismissal is appropriate for failure to state a claim.

## ANALYSIS

The thrust of the Motion is straightforward and summarized by Defendant as follows:

> [Defendant seeks] an Order dismissing the Plaintiffs' claim for punitive damages as to him based on failure to state a claim upon which relief can be granted, as the Complaint sets forth factual allegations that, at most, rise to the level of lack of ordinary care and negligence and fail to show the reckless and egregious wrongdoing as required for a plaintiff to prevail on a claim for punitive damages under established Tennessee law.
>
> Additionally, this Defendant [seeks] an Order dismissing the Plaintiffs' cause of action for negligence per se for alleged violations of the FMCSR for failure to state a claim upon which relief can be granted, as the Plaintiffs' Complaint only sets forth certain large Parts of the FMCSR containing hundreds of pages and regulations that this Defendant allegedly violated, the Complaint fails to properly plead a cause of action for negligence per se as it fails to set forth specific regulations, factual allegations showing how the Defendant allegedly violated these regulations and/or these violations caused or contributed to the subject accident.

(Doc. No. 20 at 1-2). The Court will address each of these arguments in turn.

I.  Claim for punitive damages

As noted by a visiting judge in a case from this district, unreported but relied on by Defendant and accurate in its description of Tennessee law:

> [P]unitive damages . . . are available "if the claimant proves by clear and convincing evidence that the defendant . . . acted maliciously, intentionally, fraudulently or recklessly." Tenn. Code Ann. § 29-39-104(a)(1); *Goff v. Elmo Greer & Sons Constr. Co., Inc.*, 297 S.W.2d 175, 187 (Tenn. 2009); *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992); *see also Medlin v. Clyde Sparks Wrecker Serv., Inc.*, 59 F. App'x 770, 774 (6th Cir. 2003). The Supreme Court of Tennessee has explained that "[a] person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances." *Hodges*, 833 S.W.2d at 901; *Medlin*, 59 F. App'x at 774; *see Goff*, 297 S.W.2d at 187 & n.11; *Richardson v. Gibalski*, 625 S.W.2d 715, 717 (Tenn. Ct. App. 1979). "It is only in cases involving this kind of egregious misconduct that punitive damages may be awarded." *Womack v. Gettelfinger*, 808 F.2d 446, 452 (6th Cir. 1986); *Goff*, 297 S.W.2d at 487; *Hodges*, 833 S.W.2d at 901; *see Russell v. Gardner*, 11 C 75, 2012 WL 170887, at *2–3 (E.D. Tenn. Jan. 18, 2012). Indeed, "it takes something far greater than lack of ordinary care to sustain an award for punitive damages" in Tennessee. *Sakamoto v. N.A.B. Trucking Co., Inc.*, 717 F.2d 1000, 1002 n.1 (6th Cir. 1983) (quoting *Richardson*, 625 S.W.2d at 717); *Womack*, 808 F.2d at 453 (stating that punitive damages are warranted only if the defendant exhibits "the kind of *mens rea* that makes it reasonable for the government not only to require payment of full compensation, but to exact retribution as well"); *see also Russell*, 2012 WL 170887, at *2; *Anderson v. U.S.A. Truck, Inc.*, 06 C 1967, 2008 WL 4426810, at *14–15 (Tenn. Ct. App. Oct. 1, 2008).

*Gardner v. Dye*, No. 3:15 C 00669, 2016 WL 10749387, at *2 (M.D. Tenn. May 31, 2016).

As suggested above, Defendant's argument as to the claim of punitive damages is quite straightforward. Defendant contends that the factual matter included in the Complaint, even accepted as true, is insufficient to suggest that it is plausible that Plaintiff could meet this standard. The Court disagrees. As noted, the Complaint includes the following allegations:

> According to an independent witness, "Defendant Crutchfield was driving erratically [as he entered the construction zone], 'whipping' in[to] the left lane at the last moment." The witness described that Defendant Crutchfield was "flying," and estimated his speed was upwards of 75-80 mph in the reduced 60 mph construction zone.

(Doc. No. 28 at 2) (citing complaint)(citations omitted). For present purposes, the Court is required both to accept that the witness reported these things and to construe the fact of such reporting in Plaintiff's favor—*i.e.*, construe such reporting as *accurate*. When the Court does so, it is certainly *plausible* that Defendant was aware of and yet consciously disregarded a substantial and unjustifiable risk to others in his path and around him, and that such disregard constituted a *gross* deviation from the standard of care that an ordinary person would exercise under all the circumstances.

Defendant's arguments to the contrary are not persuasive. First, focusing on the Complaint's allegation that he entered the construction zone (with its 60 mile per hour speed limit) at 70 miles per hour, Defendant suggests that a speed only ten miles per hour over the speed limit would constitute at most only ordinary negligence. But the Court finds it at least plausible that the excess ten miles per hour took Defendant's conduct at least somewhat above ordinary negligence and into the realm of gross deviation from the standard of care, recklessness and (at least the minimum required for) "egregiousness." Moreover, the Complaint suggests (albeit not with ideal clarity) either (i) alternatively that Defendant's speed was actually between 75 and 80 miles per hour; or (ii) that Defendant's speed was 70 miles per hour at some point but then rose to between 75 and 80 miles per hour. Defendant ignores this suggestion from the Complaint, as well as the allegations of Defendant driving erratically and "whipping" into the sole lane into which traffic was being merged. Collectively, this alleged factual matter is sufficient under *Iqbal* and *Twombly* to suggest the mental state required to support a claim of punitive damages, meaning that the applicable facts can and should be further developed by discovery to see whether these *plausible* allegations of such mental state ultimately can be established by Plaintiff to the jury's satisfaction by clear and convincing evidence.

The cases cited by Defendant (Doc. No. 31 at 4-5) do not help show otherwise, as they are non-binding and deal with materially different facts (or alleged facts). And only one of them (*Gardner*) was dealing with the standard prescribed by Fed. R. Civ. P. 12(b)(6) and the cases interpreting and applying it.

Finally, the Court wishes to emphasize that it understands that a high bar exists for a recovery of punitive damages under Tennessee law, not least in cases involving traffic accidents, and that Plaintiff may well ultimately fail to meet that bar. But the Court believes that it is inferable from the factual matter alleged in the Complaint that Defendant, well aware that what he was doing was risky and dangerous, swerved into the single (post-merger) lane at a substantially excessive speed, consciously knowing that this posed a substantial risk of danger but figured, essentially, that this maneuver (a) needed to be done for him to get to where he wanted to be among other traffic, and (b) therefore was worth the risk anyway. And if the Court is correct that this is inferable, it is at least plausible (not necessarily to say *likely*) that his conduct met the standard for punitive damages.

For this reason, the Motion will be denied with respect to the claim for punitive damages.

II. <u>Claim of negligence *per se*</u>

Under Tennessee law "[a] claim for negligence per se has three elements: (1) a violation of a statutory or regulatory duty of care; (2) a showing that the statute or regulation was meant to benefit and protect the injured party; and (3) proximate cause." *Steinberg v. Luedtke Trucking*, Inc., No. 4:17-CV9, 2018 U.S. Dist. LEXIS 109740, at *8 (E.D. Tenn. July 2, 2018) (citing *Chase, Jr. v. Physiotherapy Assocs., Inc.*, No. 02A01-9607-CV-00171, 1997 Tenn. App. LEXIS 608, 1997 WL 572935, at *5 (Tenn. Ct. App. Sept. 5, 1997)). As the second element makes clear, "not every statutory [or regulatory] violation gives rise to a negligence per se claim." *Messer v. Griesheim*

*Indus., Inc. v. Eastman Chem. Co.*, 194 S.W.3d 466, 482-83 (Tenn. Ct. App. 2005). Rather, as noted the statute (or regulation, which is what is implicated in this case) must be one "meant to benefit and protect [someone in the position of] the injured party [at the time in question]."

Defendant argues that whatever the regulation is upon which Plaintiff relies, it must be alleged with specificity. Although Defendant clearly understands that the Federal, and not the Tennessee, Rules of Civil Procedure are applicable here, he cites Tennessee Rule of Civil Procedure 8.05, which states (as the federal rules do not) that if a regulation is relied upon for a claim, the regulation "shall be clearly identified, and the manner of its alleged violation must be set forth." (Doc. No. 21 at 4-5) (quoting Tenn. R. Civ. P. 8.05).

Like Defendant, the Court understands that Tennessee Rule 8.05 does not govern pleading in this Court. And yet it is telling and tends to confirm what is already suggested by the recognized elements of a claim of negligence *per se* under Tennessee law—namely, that such a claim requires the plaintiff to identify a specific regulation and then allege how that particular regulation was violated. It follows that to satisfy *Iqbal* and *Twombly* by showing a plausible entitlement to relief on a claim of negligence *per se* under Tennessee law, a plaintiff must in the complaint identify in the complaint a *specific* regulation and then allege facts plausibly suggesting a violation of *that specific statute*; otherwise a right to relief on such a claim is merely possible, and not plausible. Relatedly, a right to relief on such a claim requires a showing that the regulation at issue was meant to benefit and protected the injured party, and such a showing obviously would have to be made with respect to a particular regulation; it makes no sense to speak in terms of assessing whether a regulation was meant to benefit and protect the injured party, other than to make that assessment with respect to a *specific* regulation.

As Defendant correctly notes, Plaintiffs allege only that Defendant violated the FMCSR writ large. The closest Plaintiff comes to specifying a regulation is not close enough; they refer broadly to seven different parts of the FMCSR, each of which contain various regulations, and makes only an ambiguous reference to Defendant violating "one or more of the Federal Motor Carrier Safety Regulations." (Doc. No. 1 at 16). This will not cut the metaphorical mustard, because (as Defendant notes, Doc. No. 21 at 7) the FMCSR is not a single regulation, but rather a collection of a variety of regulations, some of which well may advance interests unrelated to benefitting and protecting persons in Plaintiffs' position.

In short, Plaintiffs must identify a specific regulation within the FMCSR violated by Defendant, allege that the regulation was meant to benefit and protect Plaintiffs, and also set forth factual matter as to how such regulation was violated. The Court easily concludes that Plaintiffs have failed to do any of these things. And in Plaintiffs' Response, Plaintiffs do nothing to convince the Court otherwise; Plaintiffs do not say where the Complaint identifies specific regulation(s) in the FMCSR that were violated, let alone allege how they were violated or how (or even that) they were intended to benefit and protect Plaintiffs.[2]

Plaintiffs fare somewhat better in pointing out that their negligence *per se* claim was based not only on violations of the FMCSR, but also of "one or more" Tennessee statutes. (Doc. No. 1 at 10). They allege that these statutes "include but [are] not limited to" violations of five specific sections of Chapter 8 ("Operation of Vehicles—Rules of the Road") and one particular section of Chapter 10 ("Accidents, Crimes and Penalties") of Title 55 ("Motor and Other Vehicles") of the

---

[2] As Defendant notes, "Plaintiffs spend time arguing that some, or perhaps all, of the FMCSR may form the basis of a negligence per se action in Tennessee," (Doc. No. 31 at 1), but that does not change the fact that Plaintiffs needed to have homed in on one or more specific regulations. And Plaintiffs needed to do that in the Complaint; to the extent that Plaintiffs attempt to do so in their Response, the attempt fails because a response to a motion to dismiss cannot be used to supply additional factual allegations or otherwise serve to amend a complaint. *See Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020).

Tennessee Code; as indicted below, one statutes he cites once as a whole (Tenn. Code Ann. § 55-8-136) and once with reference to a particular subsection thereof (Tenn. Code Ann. § 55-8-136(b)). (*Id.*) In his Reply, Defendant rather inexplicably ignores Plaintiffs' reliance on these Tennessee statutory provisions. Still, Defendant's argument as a whole is broad enough to cover the allegations made in the Complaint. First, Plaintiffs actually hedge their bets as to whether they are alleging that all (each and every one) of the statutes (or a subsection thereof) was violated by Defendant, or whether he is alleging only that *at least but necessarily more than one* of them was violated by Defendant. Moreover, each of the six cited statutes (including the cited statutory subsection of Tenn. Code Ann. § 55-8-136) make clear on their face that they can be violated in numerous ways, and the Complaint nowhere states *how* they were violated (or alleges that whatever provision was violated existed for the benefit and protection of Plaintiffs). The closest Plaintiffs get to alleging a specific violation is when they list Tenn. Code Ann. § 55-8-106 next to the words "Driving Too Fast for Conditions"). But the statute actually contains no prohibition expressly to this effect; perhaps Plaintiffs here were referring to the statute's requirement to drive "at a safe speed," but any such reference is unclear because that requirement is contained in Tenn. Code Ann. § 55-8-106(b), and Plaintiffs do not cite that subsection even though elsewhere they have shown an inclination to cite that subsection where it supposedly contains the rule on which they rely. In short, Plaintiffs do not adequately identify a particular provision of state law allegedly violated, allege how the provision was violated, or allege that (and how) the provision was intended to benefit and protect Plaintiffs—all of which Plaintiff must do to plausibly suggest an entitlement to relief on a negligence *per se* claim based on a violation of some provision in Title 55 of the Tennessee Code.

Plaintiffs also complain that the Motion "is an attempt to short-circuit Plaintiffs' prosecution of this case before he [Defendant], and Defendant Comet Express, are required to produce a single page of responsive discovery." (Doc. No. 28 at 6). To that, there are two compelling responses. The first is that the current question is not how the Motion is properly characterized, but rather whether the Motion *should be granted* under applicable pleading standards and the contents of Plaintiffs' Complaint. The second is that "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff [that does not meet the requirements of *Iqbal* and *Twombly*]." *Iqbal*, 556 U.S. at 678–79.

For all of these reasons, Plaintiffs fail to state a claim of negligence *per se* under Tennessee law upon which relief can be granted. And the next question is what exactly the Court should do about that. On that issue, Plaintiffs write:

> Should the Court determine that the Complaint is inadequately plead as relates to negligence per se claims involving the FMCSR, Plaintiffs submit that the proper remedy is not dismissal or the striking of allegations from the pleading; rather, the Court should permit Plaintiffs to amend the pleading to specify which violations are known at this time, while reserving the right to supplement the pleading at a later time after the Defendants produce responsive discovery.

(Doc. No. 28 at 9).

"Although federal courts are inclined to grant leave to amend following a dismissal order, there are circumstances where amendment will not be allowed." *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1041 (6th Cir. 1991). "[A] district court does not abuse its discretion in failing to grant a party leave to amend where such leave is not sought." *Id.* at 1042 (citing *Carl Sandburg Village Condominium Ass'n v. First Condominium Dev. Co.*, 758 F.2d 203, 206, n. 1 (7th Cir. 1985)); *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 844 (6th Cir. 2012) ("[I]f a party does not file a motion to amend or a proposed amended complaint

in the district court, it is not an abuse of discretion for the district court to dismiss the claims with prejudice.") (quoting *CNH Am. LLC v. UAW*, 645 F.3d 785, 795 (6th Cir. 2011)); *Atkinson v. Morgan Asset Mgmt., Inc.*, 658 F.3d 549, 556 (6th Cir. 2011) ("Plaintiffs having failed to present the issue of amendment, we discern no abuse of discretion in the district court's decision to dismiss their claims with prejudice."); *see also Islamic Ctr. of Nashville v. Tennessee*, 872 F.3d 377, 386–87 (6th Cir. 2017). These authorities suggest that it would not be an abuse of discretion for the Court to dismiss Plaintiffs' negligence *per se* claim *with* prejudice, given that Plaintiffs have filed neither a motion to amend nor a proposed amended complaint.

On the other hand, these authorities do not deny the Court's discretion to grant leave to file an amended complaint after dismissing one or more claims under Rule 12(b)(6), especially where (as here) the plaintiff(s) at least raised the issue of amendment and requested (albeit here only in a brief, and not in a proper motion) leave to amend the Complaint in the event it were dismissed under Rule 12(b)(6). And there is authority for the proposition that it would be an abuse of discretion for this Court to deny Plaintiffs leave to amend the Complaint. Specifically, the Sixth Circuit has stated (albeit not necessarily with the utmost consistency)[3] that "where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *EEOC v. Ohio Edison Co.,* 7 F.3d 541, 546 (6th Cir. 1993) (quoting *Bank v. Pitt,* 928 F.2d 1108, 1112 (11th Cir. 1991)).

It seems fair to say that applicable standards regarding whether a Court can or should grant leave to amend after dismissal for failure to state seem frustratingly indeterminate. And speaking of frustration, a case like *Ohio Edison* surely frustrates any defendant who prevails on a motion to

---

[3] The Sixth Circuit has not always been crystal clear regarding the extent to which the quoted proposition is essentially absolute rather than subject to exceptions. *See United States ex rel. Roycroft v. Geo Grp., Inc.*, 722 F. App'x 404, 408–09 (6th Cir. 2018).

dismiss but finds that its success is merely a Pyrrhic victory because its serves only to allow the plaintiff a do-over, aided by the Court's direction as to how the plaintiff can craft a viable amended complaint. On balance, though, the Court believes that applicable authority that it must follow—not to mention the laudatory notion that a claimant should not suffer the permanent extinguishment of a potentially meritorious claim merely because the claimant's attorney did not put enough relevant material into the complaint that perhaps could have been included—suggests here that Plaintiffs should be granted leave to amend within a reasonable period of time.

## CONCLUSION

For the reasons set forth above, the Motion (Doc. No. 20) **is GRANTED IN PART AND DENIED IN PART**. Specifically, the Motion is denied with respect to Plaintiffs' claim for punitive damages against Defendant, and granted with respect to Plaintiffs claim of negligence *per se* against Defendant. The dismissal of the claim of negligence *per se* is without prejudice to Plaintiffs' prerogative to file an amended complaint, within 21 days of the entry of this Memorandum Opinion and Order, that addresses the deficiencies noted herein with respect to the claim of negligence *per se* (but does not otherwise make changes to the Complaint). The Court emphasizes (as the Court realizes counsel would understand) that any amended complaint must stick within the parameters of this opinion and must comply with Rule 11 (rather than reflexively include allegations intended to get Plaintiffs over the hump on a claim of negligence *per se* irrespective of their veracity), and that the negligence *per se* claim will be dismissed with prejudice unless a timely and adequate amended complaint is filed.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE